Good morning. May it please the Court. I'm Terrence Thompson, Assistant Attorney General for the State of Texas. I'm pleased to be before the Court this morning to offer argument in support of the positions of the appellant in this case. The appellant, Christopher Weber, is a State-appointed receiver appointed by a district court out of San Antonio, Texas. It sits in Bexar County. I'm here to advocate this morning that on behalf of the State, that it's an important governmental interest to make sure that our receivers when they're appointed by our courts and are going around the land, and in this case it looks like around the country, and around the world, that they be afforded the immunity that they deserve under appropriate circumstances. And I'm here to suggest to the Court that this case, although it's complicated, is one where official immunity that's available derivatively to the receiver through the judge that appoints him should be applied here. Now, the district judge seemed to think that the standard of official immunity was the standard contained in 42 U.S.C. 1983 cases. Do you agree with that? I need to begin with a sincere apology to this Court, that here we are two or three days before oral argument, and the parties seem to have forgotten that they went to law school and that there's a doctrine called Erie v. Tompkins, and that's the case. Well, we were going to help you and remind you of that doctrine. Well, thank you. I appreciate the subtle warning in your order from last Friday. Obviously, now that the parties have gone back and had a chance to take your kind suggestion, we realize that the district court sitting in Nevada in diversity is supposed to be applying the law of the forum state unless there's a compelling reason to do something different. And there's no substantive federal cause of action here, is that right? Not that I went back and reviewed the... And there's no 1983 cause of action? No, and nor did Mr. Weber allege any kind of 11th Amendment immunity as being an arm of the state or anything such as that. So we're dealing with a state law cause of action, period. Yes, and two parties' briefs that don't cite any Nevada law to the court. And no Nevada choice of law. No. So not only do we like to remind you of Erie, but we might like to remind you of Claxon. Yes, sir. Okay. And so I hope that my... Did you guys draw straws who got to go first? To hear this little introduction? I would have suggested any procedure that could have avoided me standing here at the moment. But I hope you got my letter that I faxed to the court yesterday, my real 28J letter, that basically sets out what I believe now to be the correct version of the law. If you did not... It seems that two people, two out of the three have done so, and the third has just received it. Okay. Well, is that you, Your Honor? Well, let me tell you, my understanding... That's okay. He only has one vote. All right. Let me tell you, my understanding... And I read fast. Okay. Thank you. Let me tell you, if I may, Your Honors, what I think the current and appropriate state of the law is, and then we'll kind of go from there. Obviously, the Federal Court in Nevada was supposed to have recognized Nevada law and not only attempt to determine what the substantive law of the State of Nevada was, but also the Nevada conflicts and choice of law provisions. And to do that, they're supposed to look to statutes of the State of Nevada, if there are any, and to the pronouncements of the highest court of the State of Nevada. And if there are no pronouncements of the highest court of the State of Nevada on any particular issue that's relevant to the choice of law issues, they're supposed to basically guess, and you are supposed to do the same thing sitting as de novo review in this court. So I've been able to discover in my opponent's Rule 28J letter seems to suggest the same thing, that the Nevada Supreme Court has adopted the Restatement Second of Conflicts that basically applies a substantial relationships test in determining whose law is going to apply in a conflict situation. And that started even before the 1993 case that I've mentioned, Williams v. USAA. And then specifically in Motenko v. MGM, the Nevada Supreme Court adopted sort of the Restatement Second of Conflicts regarding torts. I'm very sorry to hear that the Nevada courts have adopted the second restatement. It has been described as a playground for unbalanced minds. Well, I guess as the appellant, I'm happy to hear that. In any court's policy, this is not a criticism of the Nevada court, but rather the second restatement. Well, I can see that, but I actually found something in the restatement that I like that's pretty succinct. So maybe that won't be as complicated as it otherwise might be. But as the sent in Motenko says, that while the majority attempts to say that they've I'm not sure how much it's different from we're just going to apply our law right here. But setting that aside, I have an argument how we could apply Texas law by using the Motenko standards. There are four different categories in there. They're a little confusing, but as best I can tell it, the four factors are the place where the conduct giving rise to the injury occurred. Well, that could be all over the globe, but it started in Texas, I guess, by the appointment of the receiver. Well, the injury, what's the injury that's being complained of in this case? In some, Your Honor, it's basically a malicious prosecution case. And where did the assuming for purposes of argument that it is a malicious prosecution,  Well, certainly one in Nevada. Yeah, I mean, that's what they're complaining about, right? And but then they counter claimed for this is basically a giant attorney's fees case. They want to say that all the actions brought by my receiver all over the world were in bad faith. And I'm sure the substance of this is to get an enormous sum for attorney's fees. And so they've listed the actions filed in Switzerland and the Bahamas and in the High Court of Justice in London and Lichtenstein. And whose law are we going to apply to decide all this? But they did file in Nevada. Yes. And so let's start from there. I think that's a good place to look. And let me just ask, what difference does it make in this case? Well, I guess that gets to a good point. Because even if we're going to apply Nevada law, Your Honor, under the restatement, the – which not only deals generally with what a good – with what appropriate law would be in general about courts, but there's a specific section on receivers and what law should apply to the conduct of receivers. Fortunately, I discovered this since Friday. And I guess lucky for my man, under Section 414 of the Restatement Second of Conflicts, dealing with law, determining whether the receiver is personally liable, and addressing claims arising upon transactions after appointment, which I think generally refers to the topic here. They're trying to make the receiver liable. And, of course, all these claims for his litigation occurred after he was appointed as the receiver. Comment C says, whether a receiver is acting within the scope of his authority as receiver is determined by the local law of the state in which he was appointed. So assuming Nevada is going to stick with the notion that they've adopted the restatement second, I'm going to suggest to the Court that if this particular issue came before the Supreme Court of Nevada, that they would recognize this. Of course, this case has not been before the Supreme Court of Nevada, so you're going to be called upon to decide in your best estimation what they would rule. So I think as far as whether receivers are afforded absolute quasi-judicial immunity is really not in dispute. The law in the Ninth Circuit, the law in Nevada, and the law in Texas all afford receivers this immunity, but then the devil gets to be in the details. So everybody acknowledges, as Judge Hunt did in the first sentence of his order, that once we determine whether the receiver was acting in the scope of his appointment as receiver, well, then this immunity is what results from that decision. And there's even some question, I gather, as to the scope of his authority. That's to say there's some question. Yes. Later orders and clarification and so on. Yes, Your Honor. And so once we – fortunately, we're here today trying to decide what law to apply at the last minute, but I guess I'm going to take the position that it looks like in determining whether he was acting within the scope of his authority, Texas law will apply. And therefore, he has complete immunity.  And if Nevada law applied, he would not have immunity. Is that correct? According to my opponents, they think that Texas seems to let their receivers get a little bit more off the course than in other places. And I do believe that in Texas, receivers do not have the same types of duties imposed on them that my opponents have argued other jurisdictions would require. We literally don't believe in the doctrine of good faith and fair dealing. And so the receivers do not have the – Is this a generalized statement about Texas? Yes. The Supreme Court of Texas has only found that under one circumstance that no one can remember. So they don't have that duty. And all the receivers do in Texas is they take an oath under Texas Civil Practice and Remedies Code section 64.022 to swear to perform their duties faithfully, which I argued before the Court, it does not mean that the receivers then have a duty of good faith and fair dealing to everybody that they run into. Now, I'd like to address for a moment the whole notion about what this receiver is supposed to be doing. And I think that the jurisprudence shows that under a functional test that basically all courts apply to this question, they're looking at what the receiver actually does, not just his title. And there's a good example in Texas jurisprudence that I've cited to the Court, Delcourt v. Silverman, where they look at the different potential roles of a guardian ad litem. And it would seem like that person would be an arm of the Court. They're appointed by the Court. Well, there's a distinction whether they're appointed to basically represent the child, you know, take the duty from the parents and give it to the guardian, where he's basically the attorney for the child. And in that case, they say, no, you're not responsible to the Court. You're not advising the Court. You're not acting on the Court's instructions. You're just appointed by him. Versus when a guardian ad litem is appointed to go out and basically do home studies and make recommendations to the Court as to whether the child should be placed here or there or whatever. And in those cases, when the guardian's duties are more to the Court rather than to the specific person in the – before the Court, well, then they do grant the immunity to the guardian. So – and there are cases where Court clerks are found not to be – not to be entitled to this immunity for the reason that they don't exercise discretion. Same thing for court reporters. So basically, as I see the jurisprudence in Texas and elsewhere, we're supposed to be seeing who the – who the court official is responding to. Is it the judge? Is he really an arm of the judge or not? And then secondly, even if he's responding to the judge, as the clerks and the court reporters do, is he out there exercising discretion in the performance of his judicial duties? I'd say that when a receiver is appointed in a case like this, where the task is to go out and find the assets of the defaulting husband that are being alleged to be hidden under shells, being switched around all over the world, that the duty of the receiver in that case is as an investigator and as an advocate and as a litigator. And he's doing this at the instruction of the Court, and he's not going to make anybody happy in the process of doing this except for the person who didn't default. And in this case, that was the wife. And a very similar case arose in Texas where – where in Clements v. Barnes, the Supreme Court of Texas case, where the court extended official immunity to a bankruptcy trustee who cited that case in our brief. And the bankruptcy trustee acts in a lot of ways like the receiver did in this case. It's an adversary role. It's a litigation role. The trustee in bankruptcy basically doesn't get along with anyone. And so – Well, if a bankruptcy trustee is given $10,000 by a single creditor and is loaned $300,000 along the way, isn't that bankruptcy trustee acting against the interests of all the other creditors? Well, in this case, the other creditor is the husband, who is never going to come on And if the receiver ever was asked by the court to apportion properties between the two of them or to manage properties, then he would have a duty, I think, to be equally fair to everyone, but we never got to that point. The duties of the receiver in this case was to go find this stuff, see if he can't get to the bottom of it. And, of course, all the information he was getting about where the assets were, what the strategies for hiding them was, who the people were, where the money was going, came from the wife. She was the only party before the court. So that brings me back to the basic five complaints that my opponent has against the receiver, and those are he was too cozy with the wife. I just addressed that. The receiver is basically doing what the court says. The wife got her default judgment. The trial judge in San Antonio has told him to go out and seize these assets and bring them back to the jurisdiction of the court. There's no doubt that that was his task. The next thing he complains about, actually, the first thing was what Your Honor just mentioned. You know, where does authority come from? And there is some dispute about that. And I think a fair reading of the record is that he was supposed to go out, file these lawsuits, find these assets. My opponent picks fun at the fact that the district judge in San Antonio entered orders after the fact approving of this conduct. Well, I kind of beg to wonder how one is supposed to look behind those orders. A district judge in the State of Texas is an elected official. It's the highest trial court we have. If the suggestion is Judge Tanner is just signing anything that anybody will put in front of her, I can tell you that's not how that's happening. If the judge signs an order, and there are five of them in the record, that says, I know what my man did. I know what he's doing. He's out there filing these lawsuits. I approve of it. I wanted him to do it. I've known about it all along. If he hadn't have done it, I'd have held him in contempt. Now, is it the province of the district court in Nevada or respectfully of this court to say, well, that's just whitewash after the fact? So we can't consider those orders as evidence that he was acting pursuant to the judge's direction. If you all decide that, I've lost. But my receiver was doing what he thought he was supposed to do. The judge who appointed him agreed. So that's part one. Part two was too cozy with the client. The next was he gave her legal advice and drafted affidavits. I've cited U.S. and Texas authority that says that this kind of cozy relationship between one of the litigants and the receiver is not so great, but it's not enough to strip one of their official immunity. The one case that's cited in my brief where the receiver actually let the lawyer for one of the beneficiaries of the receivership go out and round up the assets for him, basically performed a search and seizure. And the court said, well, we really don't like that, but that's fine. That won't strip you of your absolute judicial immunity. So maybe we do let our receivers run a little bit of muck in Texas. That's not what I'm here to suggest. But if Texas law ---- You have just suggested it. Well ---- What is the Texas statute where it says that the receiver not be a party attorney or other person interested in the action for appointment of a receiver? Does any of what you're talking about help define what interested in the action ---- Your Honor, the statute that you're referring to and reading from is what the qualifications are for a person who's about to be appointed as the receiver. But if after appointment the receiver becomes interested in within the ---- whatever the Texas defines interested in, would that be a basis for stripping of immunity? No. So you can become interested in the action after you've been appointed? Depends on what your duties are, Your Honor. I'd say in this case my ---- and I don't also know what interested means, but ---- Well, I don't either. It's the statute. But what it means in the instance where the statute is supposed to apply, you can't be one of the people who, when the court says I'd like to appoint you as the receiver, well, you can't be a party and you can't be interested in the outcome. In other words, you can't be one of the children of the State. You can't be somebody who, from the get-go, is anticipating a benefit from the receiver. How do the receivers get compensated? Well, that's another point. They get paid. So at some point they are interested. They become interested in the fact that they're ---- Percentage of what they collect? No. They're paid as attorneys by the hour. And the fee applications that were at issue here were all approved by the judge, including the ones for all the cases that are ---- So if the ---- just to test where this ---- where the limits are, where the constraints are, if the receiver, in order to, as many clients think their lawyers do always, runs up the bill by chasing all over the world and, you know, racking up billable hours on frivolous activities, all in the name of pursuing assets, would that be sanctionable under Texas law, though, or controllable? Well, the first thing is the person who will be adversely affected by that are the parties who are going to get half the judge-divided, the assets half and half. So that's the husband and the wife who would have standing to complain that he's wasted the assets of the receivership. Obviously, the wife's not complaining. The husband's not there. And the judge has to approve all the fee applications. So if he's running all over the world, running up fees to put the money in his own pocket, the judge is in charge of that, and in addition, if either of the beneficiaries of the receivership complain, then the judge has to take that into account. So the target of this sort of expanded frivolous activity has no standing to complain about it? I actually think no. But I don't think that the appeal turns on that in this case, Your Honor. It either has immunity from anybody's suit or not. At this point, I think we have your argument in hand. Let's hear from the other side, and we'll give you a minute for rebuttal.   Thank you. May it please the Court and Counsel Lawrence Kasten for the Appellee Oilman Participation Corporation. Let me also begin with my preemptive mea culpa. I take some solace in the fact that the Fifth Circuit, in a case that both parties cited in its briefs, considered a receiver immunity case that involved both state and federal law and only applied federal law. But, of course, the Court is correct. State law does apply here. Let me answer Judge Fletcher's question. Is there a difference if we apply Texas or Nevada law? There's a small difference. I'm Judge Nelson. Judge Nelson, I'm sorry. They should put our names in front of it. My apologies, Judge Nelson. That's all right. It's quite an honor to be called Judge Fletcher. Whichever Fletcher I meant. I'm sorry, Your Honor. She likes my mom a lot. There is a difference whether Nevada or Texas law applies. I think the difference is that under Texas law, we win quite easily. Under Nevada law, we win easily, but not as easily. Texas law would be the same. In your view, Texas law provides less protection for the receiver? Absolutely, Your Honor. And I think that Mr. Thompson cited the exactly correct case, the Delcourt case. The Court talks about the immunity of a guardian ad litem in that case, and it looks at two different functions, one that has immunity and one that does not. The court said, the Texas Court of Appeals said, as long as a guardian ad litem is making reports to the court and doing things that the court otherwise would have to do, the guardian has immunity. However, when the guardian ad litem acts as an advocate, that is, advocates in the interest of the child, immunity is lost. And the Texas Supreme Court has adopted that analysis. And the Court's analysis is very simple. It didn't linger long on the analysis. It said that when a guardian acts as an advocate, that is not a judicial act because judges cannot be advocates. That's Texas law. You don't even get to the question whether the receiver was or was not within the scope of his authority under Texas law, because you're telling us that for purposes of Texas law, a guardian ad litem is the equivalent of receiver? Well, the Court bundles them all together when it talks about derivative judicial immunity. The notion in Texas of derivative judicial immunity, as in most other jurisdictions, is that it derives from that of the appointing judge. And the Texas Court's analysis is we will recognize that authority when the court officer, the derivative judicial actor, has done things that other – has spared the judge work, has engaged in functions that the judge, him or herself, would have to do. However, advocacy, nonjudicial acts, things that no judge could do, are not vested with officials. How does a receiver take action to collect, which is one of the powers and duties of a judge – I mean, of a receiver under Texas law, collect and compromise demands? Sometimes by being an advocate. Well, so being an advocate, then you can be an advocate. You can, but you don't have immunity when you do and do so tortiously. I think that the – the – the – What's the authority for saying you don't? You don't have immunity when you actually discharge the actions that you have the power to do. The guardian ad litem in the Dell Court case was specifically – The guardian ad litem had the power to collect and compromise demands? No, but the guardian was acting specifically pursuant to a delegation by the appointing that the court had expressly authorized the guardian to advocate on behalf of the child. The Texas court did not linger on that analysis. It may not linger, but when you're talking about analogy and then we go to the Texas receivership statute, it says this is what a receiver is supposed to do under the control of the court. And you're saying that on – on anything that involves acting as an advocate, which a judge obviously can't do, the judge can't receive rents either. Correct. So none of these activities then, I take it, would be subject to immunity. Under Texas law, absolutely not. Because of this Dell Court case. Yes. And the Halsey case from the Supreme Court of Texas that adopts it. It's not a – it's not a discussion about what the – the delegated judicial officer can or cannot do. It's a question of which actions the officer has immunity for. And if those actions are things that no judge could do, there's not immunity. That's a very big wind-up for me to tell the court that I think Nevada law applies. The – the leading case is the Montengo case in Nevada. I do not agree that that court adopts the restatement. The court took a very stringent position with respect to conflict of law in torts cases. The Nevada Supreme Court has decided unless some other State has an overwhelming interest, Nevada courts will apply Nevada law in Nevada tort cases. And that's what this is, an abusive process case. I don't believe any State has an overwhelming interest. I'd like to turn to Nevada law to explain why I think we also win under Nevada law. Now, there's abusive – help me a little bit on the underlying claim here. That is, there's a claim of malicious prosecution. It's abusive process. It's abusive process. And how broadly does that go? Abusive process with respect to what? Suits brought in Lichtenstein? Yes. To numerous – to actions brought in numerous forms. And your argument is that for a suit brought in Lichtenstein in which we would judge whether it's abusive process by looking at the facts and Lichtenstein law, I assume. Yes. You say that we apply Nevada law to that? Yes. I think the Nevada court has to make a decision for this entire cluster of allegations that we've made. Even though the wrong complained of did not take place in Nevada? Well, much of the wrong complained of did occur in Nevada. I'm now sticking with the Lichtenstein case. With respect to the Lichtenstein case, was there any of the wrong complained of that took place in Nevada? The injury occurred in Nevada because he's pursuing properties that exist in Nevada. And the argument is that he's abused the process of these other forms in order to pursue Oilman to obtain to – first he's clouded title and ultimately wants to obtain the properties that are in Nevada. So the Lichtenstein suit is pursuing properties owned by Oilman in Nevada? I cannot recall the specifics of the Lichtenstein suit, but I believe that all the actions that he's taken against Nevada – against Oilman are ultimately to pursue this property that's in Nevada. That's why he's after Oilman, because it owns these Nevada properties that Mr. Weber wants to claim should be made part of the estate. And why is this – I mean, I have to say that I'm not, as you can tell from my question, intimately familiar with the Lichtenstein litigation. Nor am I, Your Honor. Well, maybe we better – we'll leave it off to one side for the time being. The Nevada court must apply somebody's law. And if you look at the complaint and which State has the most overwhelming interest with respect to the abusive process claims, no matter where they're brought, it's Nevada. And let me explain why. The property that's the subject is in Nevada. The chief harm that's been alleged by Oilman in the abusive process claim is wrongful clouding of the title of the properties in Nevada. The centerpiece, notwithstanding these allegations regarding other forums, relates to the actions that Weber has taken in Nevada to pursue the property. And on the question that the Court is asking, what happens where there's alleged to be an abusive process in multiple jurisdictions, I couldn't find any case. I found a judge-friendly case from the Second Circuit from the 1970s in which he concluded that suits all across the country to pursue that would affect a New York contract, ultimately you should just apply New York law to all of those. I wish that I had the citation for the Court. I do not. I can provide it supplementarily. It's the only case I found that was close. Clearly, Nevada has an interest, at least with respect to the large majority of the claims that are made in the abusive process action. Let me turn to Nevada law. There is a case directly on point with respect to receivership immunity in Nevada. It's the Ames v. Crown Partnership case, 932 Pacific 2nd, 1071. And in the Ames case, a receiver was alleged to have harassed a tenant in a building that was subject to the receivership. The receiver claimed immunity, derivative judicial immunity under Nevada law, and he said it's because I have this broad delegation with respect to this building. And I think to understand just how limited Nevada derivative judicial immunity is with respect to a receiver, it's important to understand just how broad the delegation was in the case. The receiver in the Ames case was given the authority to, quote, take such steps as the receiver believes necessary or desirable to cause the property to be occupied. The lower court, because of this broad delegation, said this receiver has immunity, and the Nevada Supreme Court reversed. It essentially imposed a two-part test for receivership immunity. First, it says that the receiver only enjoys immunity if he, quote, faithfully and carefully, close quote, adheres to the authority delegated to him. And second, he must act in good faith. And the Court held that despite this broad delegation to the receiver, harassing of a tenant was not faithfully and carefully adhering to the delegated authority. That's this case, Your Honor. The argument here is that Mr. Weber is harassing oilmen, that he's pursued them without a basis for doing so, and that, in fact, he's done so rather unapologetically. Most plaintiffs are unapologetically. That's true. But I think that goes back to the point that I was trying to make in response to Judge Fisher's point about the immunity recognized by a Texas court. Derivative judicial immunity exists to protect not the receiver but the judge. That's the seminal Federal court of appeals case in the 1983 context, the Kermit construction case, which both parties have cited in their briefs, makes this point. It's about protecting the judge and the independent decision-making of the judge. And so the point is that when the receiver is an unapologetic plaintiff, when he's out there advocating, acting as an advocate, that's when the immunity goes away, because there's no common law analog for represent other than in criminal cases for prosecutors. There is no immunity that was recognized in common law that would allow us to extend the immunity that judges get. Judges get this immunity because when they decide hard cases, hard fractious cases, we don't want them worried about civil liability when they do that. And it's a pretty remarkable thing to extend that to a receiver. And to extend it to a receiver when he's out there acting as an unapologetic plaintiff would be quite extraordinary and I don't think consistent with Nevada or Texas law or Federal law. On that point, let me go to this Court's leading case on immunity of receivers, the New Alaska case. What the Court says in that case is very similar to Texas law. When the receiver is doing things that the judge otherwise would have to do, that is, administering to the business of the estate, writing checks, doing things like that, that's where there's immunity. That's not what we're talking about here. These are abusive process claims. We're claiming that he came to Nevada, sued us in Nevada, violated the tort law of many harassing reasons, and there's abundant evidence of this in the complaint. He's plainly not interested in merely acting as an arm of the Court here or running the business of a marital estate, but he's looking to harass the ex-husband of one of the creditors of the estate and anybody that he believes might be connected, including oilmen. He's also apparently taken some personal financial interest in the outcome of the receivership. He believes that he will, quote, be paid quite handsomely if he harasses oilmen and others to the point of settlement. There's an e-mail that he wrote to that effect in the record. He's made misrepresentations to courts. The lower court found that he made misrepresentations in order to perpetuate this harassment of oilmen. He has unapologetically aligned himself with a creditor. And I think what I heard Mr. Thompson say is, well, that's okay, because he's already decided what he's going to do at the end of the receivership with the money. That's exactly contrary to Texas law, and it's forsaking impartiality. It's precisely what he's done. They share counsel. She's given him money, as Judge Nelson noted. He takes direction from her. He gives her legal advice. He calls her his client. He files briefs on her behalf. He is hardly faithfully and carefully executing the instructions of the appointing court. What he's done is he's twisted the orders beyond recognition to satisfy this agenda. Well, of course, that's not the question immediately in front of us as to what he has done. The question immediately in front of us is what level of immunity he might or might not enjoy. That's correct, Your Honor. But I think they're related. I do think they are related, because fundamentally the question is, are we going to extend the Nevada court extend a judicial immunity to this actor? And I think the point is that even if he's done things to him. I'm interested by your quick analogy to prosecutorial immunity, when you say, well, the only analogy except for judicial immunity in the common law is prosecutorial immunity. And, of course, you know the prosecutor, so long as he's performing advocacy functions, is absolutely immune. In a criminal case, absolutely. But I don't know of any case in the country that's extended prosecutorial immunity to a receiver who's going to be. I understand that, but you are reasoning by analogy to judicial immunity and prosecutorial immunity. My point was, Your Honor, that ultimately all these immunities stem from the underlying recognition that at common law there were certain people instrumental to the court process who received immunity. In the modern day, we have some new kinds of actors, administrative law judges, other kinds of actors that didn't exist at common law. And what the Supreme Court has said, mainly in a 1978 case called Butts v. Economo, in these kinds of cases, we're going to look, was there a common law analog? Yeah. Have we just sneaked back into 1983 land? We have, Your Honor. But to look at the Nevada cases, they cite pretty liberally to Federal cases. So in predicting what the Nevada court would do, I think it's relevant. Let me move to the point about whether Weber was acting within the delegation of his authority. And Mr. Thompson has cited a number of orders in his brief that to look at them, you would you might not recognize or you might not realize that all of these orders were issued by the Nevada court, I'm sorry, by the Texas court after Weber had sued after Weber had been sued by Oilman. Starting in February of 2000, and this begins at page 327 of volume 2 of the supplemental excerpt, starting February 16, 2000, a number of orders start to appear from the Texas court that say, oh, Weber, it was okay for him to go chase Oilman. Every one of these orders comes after we sued. So what's happened, and moreover, these are orders that purport on their face to be orders granting him fees. And it's undisputed from the record that Weber wrote these orders and there was a blank for the judge to write in a dollar amount, which she did, and then she signed them. But essentially what Weber is asking this court to hold is that a receiver acts within authority. What the receiver can do is violate the tort law of the state of Nevada, act outside the authority delegated to him up to that point, wait to get sued, then go back to his appointing court and get the court to issue orders that after the fact say you have immunity. And in fact, these orders are quite interesting. He did some belt and suspenders drafting. He started with paragraphs that said you can pursue Oilman. It was okay that you did so. And then he puts another sentence in that says and you have judicial immunity. So he got the Texas court after the fact to retroactively bless his conduct before the fact. I think it would be horrible policy to say that a receiver could go back and after being sued, essentially immunize himself by convincing the appointing court that it should do so. We're not saying, as Mr. Thompson suggests, that these orders shouldn't be presented to the trier of fact. And maybe if Mr. Thompson wants to argue that they're somehow indicative of the authority Weber actually did have, he can take that position. But I don't think he can win on that, and let me explain why. The order that initially gave Weber his authority was issued in 1997. His predecessor's authority, 1997. In 1999, Weber goes back to the Texas court and says, I need you to give me jurisdiction with respect to Oilman. I want to pursue them. Clearly that's not something he needed to do in 1997 if he thought he'd already had in 1999, if he thought he'd already had that authority back in 1997. And in fact, the result of him going to the Texas court the second time, he didn't get the authority he asked for. Oilman objected on personal jurisdiction grounds, and so the subsequent Texas court's orders exempted Oilman from the relief that it was granting and exempted Oilman from the powers of the receiver. All of this is actually undisputed in this case. Mr. Weber has never argued that the orders from 1997 and 1999 gave him authority with respect to Oilman. He's relying exclusively on these post hoc orders. The district court below made this point succinctly. It said, quote, There is no and has never been a Texas judgment against Oilman. That's the supplemental excerpts at page 125. I would submit that under any authority, Federal authority, Texas authority, Nevada authority, that's the end of the case. If the receiver has departed from the authority he's been granted, there is no immunity in any of those jurisdictions. Unless the Court has other questions, that's all I have. Kennedy. Just to tie that one up, what's the logical inference from the fact that there's no judgment obtained? If there had been a judgment, then he would have been within his authority? The authority that's granted to the receiver in 1999 says that there are defaulting defendants that are subject to the court's order. When the order then gives Weber his authority, it says he has authority to pursue the assets of the defaulting defendants. So that's his authority. Earlier in the order, the Texas court makes clear Oilman is not a defaulting defendant because there was unclarity about whether the court could exercise personal jurisdiction over Oilman. And rather than rule on that, the Texas court simply excluded Oilman from its orders. And again, with respect to the question, I see that my time is expiring. Again, with respect to the question whether Weber had authority starting in 1997, if he thought he did, why did he go to the Texas court again in 1999 and ask it for authority that he thought he already had? I thank the Court. Again, I apologize for missing the eerie question. That's all right. Thank you. We're pretty thoroughly ventilated. If you'd like a minute. I think it may take more than a minute. Well, let's start with a minute. I'll try to make it really quick. First thing I'd like to say is that there is a kernel of truth in what you just heard about, about the orders and who was subject to them. Because Oilman filed a special appearance in Texas, they obviously weren't a default defendant, and so the order addressing default defendants didn't apply to them. And the orders just said that. And in light of the fact that there was some question whether the Texas state court was going to be able to exercise jurisdiction over Oilman in Texas, the receiver was sent to Nevada to attempt to bring the claims in a court where there would be jurisdiction. And all he did was came to a Nevada state court and filed a motion, I mean, an application for temporary orders to keep the property from being sold while their claims were litigated. That case was removed to the federal court, and Mr. Weber was made a party defendant but not a party plaintiff. Mrs. Kohlroth was the plaintiff by the time the case got to the federal court. And so he was involuntarily made a plaintiff by Oilman. He wasn't a plaintiff. And his application to become a party plaintiff was denied by the district court. So he's been involuntarily made a party. He's not allowed to present affirmative claims, but yet they can counterclaim against him for claims all over the world and apply Nevada law in a Nevada court. That's why I'm standing here. This is just not how we want to see our Texas receivers treated. Well, but the alignment of parties question has not been appealed to us. I mean, that's not in front of us at this time. Is that correct? No. I'm just telling you that's an equitable argument pretty much, Your Honor, is that we're talking about abusive process. He sought a single temporary restraining order. And then the world is going to come down on him. And in order to avoid trial, which is what absolute judicial immunity is supposed to give you, he's going to have to prove the merits of his cases all over the world when the merits really aren't at issue in order to show that it was legitimate in order to get the absolute immunity that he should have come in the door with. Okay. So I urge the court to reverse the decision. Okay. Thank you very much. I appreciate the arguments on both sides. Very good argument. Thank you. The case of Oilman Participation Corporation v. Weber is now submitted for decision. We'll take a 10-minute break and then we'll reconvene. We've got two cases left on the argument calendar, Baccarat Fremont Developers and Pacific Coast Federation of Fishermen's Associations. All rise. This court stands to recess until rehearsal. Thank you. I was there the second time. He said, oh, my God, I did it again.  Okay. Okay. Okay. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Go ahead. Good morning? Yeah. You want in. Yeah. What? Mr. Mr. He's now assigned as an ambassador for Paris. Yeah. Thank you. Sir. Yeah. Raise your bar. Now.  Thank you, yeah.
judges: D.W. Nelson, W. Fletcher, Fisher